IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LETTIE MCCLAIN and ROBERT MCCLAIN ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case no. |
| ) | |
| ALIXI JOHNSON and PARAMOUNT ) | |
| RENOVATION GROUP, INC. ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT AT LAW**

NOW COME Plaintiffs, LETTIE MCCLAIN and ROBERT MCCLAIN, through their attorney, Sabreena El-Amin of CTM Legal Group, and for their Complaint at Law against the Defendants, ALIXI JOHNSON ("Johnson") and PARAMOUNT RENOVATION GROUP, INC ("PRG"), and state as follows:

**INTRODUCTION**

1. Plaintiffs Lettie McClain and Robert McClain, citizens of Texas, hired Defendants to repair Mrs. McClain's childhood home in Chicago after a devastating flood that occurred just after Mrs. McClain lost her father and her mother suffered a debilitating stroke. Unfortunately for Plaintiffs, Johnson and his company accepted tens of thousands of dollars of Plaintiffs' insurance funds, only to abandon the project, ignore Plaintiffs' countless inquiries, and leave the home in an unlivable state. Defendants' abandonment of the project and retainment of the funds has forced Plaintiffs to go out of pocket to not only finish the 80% of the work Defendants never initiated, but also to repair the faulty and defective work that Defendants did perform. As a result of Defendants' breach of their agreement, Plaintiffs have suffered more than $100,000 in damages. Plaintiffs now bring this action for breach of contract, violation of the Illinois Consumer Fraud

1

and Deceptive Practices Act, promissory estoppel, plead in the alternative, and unjust enrichment, plead in the alternative.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Lettie McClain is an individual who is a citizen of Texas.

3. Plaintiff Robert McClain is an individual who is a citizen of Texas.

4. Defendant Alixi Johnson ("Johnson") is an individual who is a citizen of Illinois.

5. Defendant Paramount Renovation Group, Inc. ("PRG") is a corporation with citizenship in Illinois.

6. This Court has jurisdiction over Counts I and III pursuant to 28 U.S.C. § 1332, as the Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

7. This Court has supplemental jurisdiction over Counts II and IV pursuant to 28 U.S.C. § 1367 because Counts II and IV are interrelated with Counts I and III and arise from a common nucleus of operative facts such that the adjudication of Counts II and IV with Counts I and III furthers the interest of judicial economy.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois, Eastern Division.

## GENERAL ALLEGATIONS

9. Plaintiffs live in Texas with their two minor children.

10. In October of 2021, Mrs. McClain's father passed away. Shortly thereafter, Mrs. McClain's mother, who was living in Mrs. McClain's childhood home in Chicago, IL (the "Property"), experienced a stroke leaving her in need of full-time care.

11. Mrs. McClain relocated her mother to Texas and became her full-time caregiver.

12. Just a few months later, in January of 2022, a frozen pipe in the upstairs bathroom of the Property burst, causing extensive flooding damage throughout the home.

13. After over a year of back-and-forth with Liberty Mutual, extensive water remediation, and vetting multiple contractors, Plaintiffs finally received approval and funding for Defendants to commence the repair and renovation project.

14. On April 1, 2023, the parties executed a contract ("The Contract") itemizing all work to be undertaken as part of the repair and renovation project. The Contract estimated a timeframe of 12-16 weeks to complete.

15. The Contract provided a "Projected start date" of April 3, 2023 and indicated that the final two weeks of work would be "June 19-June 30."

16. The Contract stated a total price of $84,788.27.

17. On April 5, 2023, Defendants received the initial 33% deposit via check in the amount of $27,980.13.

18. Plaintiffs furnished a payment of $27,980.13 on June 29, 2023. Only roughly 20% of the work had been completed at the time.

19. In or around October 2023, after several weeks of no contact, Plaintiffs finally heard back from Defendant Johnson who was apologetic about the lack of communication and progress with the repairs.

20. Defendant Johnson suggested that the parties enter a new contract with an updated schedule, a guaranteed completion date, and late charges should the project continue past the new completion date.

3

21.     On or around October 13, 2023, the parties executed a new contract ("New Contract"). This updated contract acknowledged the first two payments paid by Plaintiffs, which totaled $55,960.26.

22.     The New Contract included a modified work schedule and an additional contract provision titled "Recommencement, Late Performance, and Completion" which states as follows:

> PRG will resume work on October 16, 2023, and agrees to complete the Project no later than December 15, 2023. For each additional day past this deadline, PRG will pay the Owner a ($150.00) fee, to be deducted from the final payment. PRG agrees and acknowledges that such payment is not meant to penalize PRG, but is a reasonable estimation of the damages the Owner will suffer due to such delay.

23.     On December 2, 2023, with less than two weeks remaining until the promised completion date, Plaintiffs reached out to Defendants via text message to inquire about the status of the project. Plaintiffs received no response.

24.     On December 15, 2023, the promised completion date, Mrs. McClain again reached out to Defendants via text message to follow up on her request for a status and remind Defendants about the $150 per day late penalty as provided in the New Contract.

25.     Plaintiffs repeatedly contacted Defendants via text and phone calls to inquire about the project status but the vast majority of the work was never initiated or completed.

26.     On November 22, 2024, Plaintiffs sent a letter via certified mail demanding the return of Plaintiffs' security deposit as well as their additional progress payment, but as of filing this complaint, Defendants have not returned any of Plaintiffs' funds or completed any additional work on the property.

27.     Of the work that was actually undertaken by Defendants, the majority was of such poor quality that Plaintiffs had to hire a new Contractor to re-do and fix the defective work.

4

28. As Texas residents, Plaintiffs have incurred significant expense in having to fly to Chicago on several occasions to personally monitor the status of the renovation project, despite the contract providing that updates would be provided "at minimum on a weekly basis."

29. To date, Defendants have retained the two payments totaling $55,960.26, despite completing less than 20% of the work on the renovation project.

30. Additionally, Plaintiffs have been unable to sell the Property due to Defendants' failure to repair the property in a timely fashion.

## COUNT I – BREACH OF CONTRACT

31. Plaintiffs reallege paragraphs 1-30 above as if fully alleged herein.

32. Plaintiffs and Defendants entered into valid and enforceable contracts on April 1, 2023 and October 13, 2024, in which Defendants would repair flood damage and substantially renovate Plaintiffs' property in exchange for $84,788.27 to be paid by Plaintiffs in three installments.

33. Plaintiffs performed under the contract.

34. Defendants materially breached the original Contract by failing to complete the renovations, failing to provide weekly updates, and performing work of such poor quality that substantial portions had to be redone at additional expense to Plaintiffs.

35. As of the date of this filing, Defendants are 409 days past the amended completion date, resulting in additional damages of $61,350.00 pursuant to the late fee provision.

36. Defendants' material breaches have caused Plaintiffs substantial financial harm, including but not limited to the cost of corrective work, travel expenses, and attorney fees incurred to address Defendants' nonperformance.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

   a. For judgment in their favor and against Defendants;

   b. for compensatory damages in the amount of $55,960.26 for payments made under the contract;

   c. for liquidated damages in the amount of $61,350.00 pursuant to the New Contract's late fee provision;

   d. for consequential damages incurred as a result of Defendants' breaches, including but not limited to the cost of corrective work and travel expenses, in an amount to be proven at trial;

   e. for Plaintiffs' reasonable attorney's fees and costs of litigation;

   f. for pre- and post-judgment interest; and

   g. for such other relief as this Court deems just and equitable.

## **COUNT II – CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICE ACT VIOLATION (815 ILCS 505/2Q(c))**

37. Plaintiffs reallege paragraphs 1-36 above as if fully alleged herein.

38. Defendants are engaged in the practice of home repair, as defined in Section 2(a)(1) of the Home Repair Fraud Act.

39. Defendants have failed to complete work under a contract or agreement for home repair.

40. Defendants have failed to return the down payment and additional payments provided to them by Plaintiffs as consideration for the aforementioned contract or agreement.

41. Plaintiffs submitted a written demand sent via certified mail on November 22, 2024, to Defendants demanding the return of their security deposit and progress payment.

6

42. As of the filing of this complaint, Defendants have not returned any of Plaintiffs' funds or completed any additional work on the property.

43. The Consumer Fraud and Deceptive Business Practices Act ("CFDBPA") provides a cause of action against any person engaged in the business of home repair, as defined in the Home Repair Fraud Act, who fails to complete work under a contract or agreement for home repair and fails to return the down payment and any additional payments made by the consumer with 10 days after a written demand is sent to him by certified mail by the consumer. 815 ILCS 505/2Q(c).

44. The CFDBPA also provides that a violation of the Home Repair and Remodeling Act constitutes an unlawful practice within the meaning of the CFDBPA. 815 ILCS 505/2Z.

45. Plaintiffs' are entitled to the return of their funds and attorneys fees and costs pursuant to the CFDBPA. 815 ILCS 505/10a.

WHEREFORE, Plaintiffs respectfully request this Court enter an order:

a. For judgment in their favor and against Defendants;
b. for the return of the security deposit and progress payment in the amount of $55,960.26;
c. for Plaintiffs' reasonable attorney's fees and costs of litigation;
d. for pre- and post-judgment interest; and
e. for such other relief as this Court deems just and equitable.

## COUNT III – PROMISSORY ESTOPPEL

46. Plaintiffs reallege paragraphs 1-30 above as if fully alleged herein.

47. If, in the alternative, the Court finds that there is no enforceable contract between Defendants and Plaintiffs, Defendants made clear and unambiguous promises to Plaintiffs that they

would complete renovations of their property as evidenced by the agreements dated March 24, 2023 and April 17, 2023.

    48.    Defendants specifically promised that:

    a.    The project would be completed within 12-16 weeks from April 3, 2023, with an estimated completion date of June 30, 2023;

    b.    The work, which was still substantially incomplete, would recommence on October 16, 2023, and be completed no later than December 15, 2023;

    c.    Plaintiffs would receive weekly status reports, pictures and updates throughout the project; and

    d.    For every day past December 15, 2023, the final payment would be reduced by $150 per day as a reasonable estimation of Plaintiffs' damages due to delay.

    49.    When Defendants made these promises, they knew or should have known that Plaintiffs would reasonably rely on them as evidenced by their making substantial payments totaling $55,960.26, refraining from hiring an alternative contractor who could complete the job in a timelier manner, and living out of state, which would clearly indicate to Defendants that if they did not keep them informed, Plaintiffs would incur significant travel expenses in order to check the status of their Chicago property.

    50.    Plaintiffs did, in fact, reasonably and detrimentally rely on Defendants' promises by:

    a.    Paying the agreed-upon 66% of the total contract price based on the expectation that the work would be performed as promised;

    b. Refraining from hiring an alternative contractor within the promised timeframe, which resulted in prolonged delays and additional financial harm from needing to repair Defendants' faulty work; and

    c. Traveling multiple times from Texas to Chicago, at significant personal cost, to monitor the progress of the renovations due to Defendants' failure to provide the promised weekly updates.

51. Despite Plaintiffs' material and detrimental reliance on Defendants' promises, Defendants failed to complete approximately 80% of the promised work, and the little work that completed was not done in a workmanlike manner, necessitating costly repairs at an additional expense to Plaintiffs.

52. Defendants knew or should have known that their assurances would induce Plaintiffs to continue making payments and refrain from hiring different contractors.

53. Plaintiffs' reliance was reasonable and foreseeable in light of Defendants' representations and presumably binding nature of the written agreements.

54. Injustice can only be avoided by enforcing Defendants' promises and awarding Plaintiffs damages incurred due to her detrimental reliance.

    WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

    a. For judgment in their favor and against Defendants;

    b. for compensatory damages in the amount of $55,960.26, representing payments made in reliance on Defendants' promises;

    c. for liquidated damages in the amount of $61,350.00 pursuant to the amended Contract's late fee provision;

    d. for consequential damages incurred as a result of Defendants' breaches, including but not limited to the cost of corrective work and travel expenses, in an amount to be proven at trial;

    e. for pre- and post-judgment interest;

    f. and for such other relief as this Court deems just and equitable.

<b><u>COUNT IV – UNJUST ENRICHMENT</u></b>

55. Plaintiffs reallege paragraphs 1-30 above as if fully alleged herein.

56. If, in the alternative, the Court finds that there is no enforceable contract or binding promise between Defendants and Plaintiffs, Defendants have been unjustly enriched at Plaintiffs' expense by receiving substantial payments totaling $55,960.26 while failing to perform the contracted renovation work as promised.

57. Plaintiffs made these payments under the reasonable belief that Defendants would fulfill their obligations under the agreements and complete the renovations in a workmanlike and timely manner.

58. Defendants knowingly retained the benefit of Plaintiffs' payments without providing the agreed upon services, thereby unjustly profiting from their failure to perform.

59. Retaining these funds without completing the renovations would be unjust and against principles of fairness.

60. Plaintiffs have suffered financial harm as a direct result of Defendants' unjust enrichment, including:

    a. The loss of $55,960.26 in payments made to Defendants for work not completed;

    b. The cost of hiring another contractor to correct and complete the renovations; and

    c. Additional travel costs incurred due to Defendants' failure to perform or keep Plaintiffs updated.

61. Equity and good conscience require that Defendants return the funds wrongfully retained, as allowing them to keep these payments without providing the promised renovations would result in an unjust windfall for Defendants.

WHEREFORE, Plaintiffs respectfully requests that this Court enter an order:

a. For judgment in their favor and against Defendants;

b. for restitution in the amount of $55,960.26, representing the payments wrongfully retained by Defendants;

c. for pre- and post-judgment interest;

d. and for such other relief as this Court deems just and equitable.

Dated: July 7, 2025                                                  Respectfully Submitted,

**LETTIE MCCLAIN**

By: /s/ _____
Sabreena El-Amin
CTM Legal Group
77 W. Washington St., Ste. 2120
Chicago, IL 60602
(312) 818-6700
sel-amin@ctmlegalgroup.com